UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION

ETTA R. JONES, §
 §
 Plaintiff, §
 §
v. § NO. 3:07-cv-1737-P
 §
MICHAEL J. ASTRUE, §
Commissioner of Social Security, §
 §
 Defendant. §

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b) and the order of the District Court filed on October 12, 2007. The findings, conclusions, and recommendations of the Magistrate Judge, as evidenced by his signature thereto, are as follows:

Procedural History: On June 27, 2002, plaintiff Etta R. Jones ("Plaintiff" or "Jones") filed an application for disability insurance benefits and Supplemental Security Income ("SSI") claiming disability due to high blood pressure, cholesterol, shortness of breath and a heart condition. (Administrative Record (hereinafter "Tr.") at 320, 324). She alleged a disability onset date of January 2, 2002. (Tr. at 320).

The Administrative Law Judge ("ALJ") conducted a hearing on January 23, 2004 at which Jones appeared with counsel. (Tr. at 604-629). Jones testified on her own behalf. The ALJ also heard testimony from Dr. Russell Bowden, a vocational expert and Dr. Howard McClure, a medical expert. (Id.). During the January 2004 hearing, the ALJ ordered a consultative psychological examination and a supplemental hearing was held on June 15, 2004,

after the examination. (Tr. at 577-603). At the supplemental hearing, the ALJ received testimony from two medical experts, Dr. Sterling P. Moore and Dr. Antoinette Cicerello, and a vocational expert, Tammie Donaldson. (Tr. at 577, 589-601). On August 19, 2004, the ALJ denied Plaintiff's request for benefits, finding that her medically determinable impairments do not prevent her from performing her past relevant work as a collections clerk. (Tr. at 239).

Plaintiff timely requested a review of the ALJ's decision by the Appeals Council and on June 1, 2007, the Appeals Council denied her request. (Tr. at 3). Therefore, the ALJ's decision became the Commissioner's final decision for purposes of judicial review. *See Masterson v. Barnhart*, 309 F.3d 267, 271 (5th Cir. 2002).

Plaintiff filed her federal complaint on October 12, 2007. Defendant filed an answer on December 27, 2007. On May 10, 2008, Plaintiff filed her brief, followed by Defendant's brief on August 8, 2008. Plaintiff did not file a reply brief.

Standard of Review - Social Security Claims: When reviewing an ALJ's decision to deny benefits, the scope of judicial review is limited to a determination of: (1) whether the ALJ's decision is supported by substantial evidence in the record and (2) whether the proper legal standards were applied in evaluating the evidence. *Castillo v. Barnhart*, 325 F.3d 550, 551 (5th Cir. 2003) (quoting *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990)). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Villa*, 895 F.2d at 1021-22 (quoting *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983)). In determining whether substantial evidence exists, the court reviews the entire record, but does not reweigh the evidence, retry the issues, or substitute its own judgment. *Villa*, 895 F. 2d 1022 (citations

omitted). Where the Commissioner's findings of fact are supported by substantial evidence, they are conclusive. *Perez v. Barnhart*, 415 F.3d 461(5th Cir. 2005).

Discussion: To prevail on a claim for disability insurance or SSI benefits, a claimant bears the burden of establishing that he or she is disabled, defined as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505, 416.905(a). Substantial gainful activity is defined as "work that [i]nvolves doing significant and productive physical or mental duties; and [i]s done (or intended) for pay or profit." 20 C.F.R. §§ 404.1510, 416.910.

The ALJ uses a sequential five-step inquiry to determine whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920. Under the first four steps, a claimant has the burden of proving that her disability prevents her from performing her past relevant work, but under the fifth step, the burden shifts to the Commissioner to prove there is other substantial gainful activity that the claimant can perform. *See, e.g., Bowen v. Yuckert*, 482 U.S. 137, 146 n.5, 107 S. Ct. 2287, 2294 n.5 (1987); *Anderson v. Sullivan*, 887 F.2d 630, 632-33 (5th Cir. 1989). "A finding that a claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis." *Lovelace v. Bowen*, 813 F.2d 55, 58 (5th Cir. 1987).

In this case, the ALJ proceeded to step four, finding that Plaintiff's chronic bronchitis, occasional hypertension and mild ventricular hypertrophy are severe impairments but that Plaintiff retains the capacity to perform her past relevant work as a collections clerk. (Tr. at 237-239). After considering the relevant medical evidence and the testimony of Plaintiff and the

medical and vocational experts at the two hearings, the ALJ concluded that Plaintiff maintains the residual functional capacity for medium work - that she can lift and carry 50 pounds, sit, stand or walk six hours during an eight hour workday and perform the manipulation required for her past work as a collections clerk. (Tr. at 238). He therefore denied Plaintiff's request for benefits. (Tr. at 239).

Plaintiff alleges several errors by the ALJ. First she alleges that the ALJ failed to properly evaluate her mental impairment. She claims that the ALJ erred in finding that her alleged depression was not a severe impairment, in finding that her depression did not meet the 12 month duration requirement of the Social Security Act, and in failing to evaluate her depression properly under the Social Security regulations. She also claims he erred in his assessment of the consultative examiner's psychological test results, in relying on Dr. Cicerello's testimony, which she claims is not supported by substantial evidence, over that of the consultative examiner, and in failing to identify what weight, if any, he accorded to the opinions of these two physicians.

In order to establish disability with respect to her alleged depression, Plaintiff is required to show an inability to engage in substantial gainful activity because of any medically determinable physical or mental impairment or combination of impairments that could be expected either to result in death or to last for a continuous period of not less than 12 months. *See* 42 U.S.C. § 423(d)(1)(A). Further, Plaintiff "must present medical evidence which indicates that [her] mental condition is a long-term problem and not just a temporary set-back" *Singletary v. Bowen*, 798 F.2d 818, 822 (5th Cir. 1986) (citing 20 C.F.R. § 404.1508).

With respect to the severity requirement, a severe impairment is an "impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). "An impairment can be considered as not severe only if it is a slight abnormality [having] such minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience." *Stone v. Heckler*, 752 F.2d 1099, 1101 (5th Cir. 1985). Plaintiff bears the burden of proving that her impairment is severe. *See* 20 C.F.R. § 404.1512(a); *Masterson v. Barnhart*, 309 F.3d 267, 271-272 (5th Cir. 2002).

In listing her disabling impairments, Plaintiff did not include a mental impairment or depression. (Tr. at 324). In disability reports, she reported that she was "very depressed because of [her] deteriorating health" (Tr. at 344), was "getting depressed, because of [her] financial state and her daughter" (Tr. at 355) and was "getting agitated and depressed" (Tr. at 357). At the first hearing on January 23, 2004, Plaintiff did not testify that she suffered depression, although she indicated that she was experiencing some anxiety as a result of the recent deaths of her mother and aunt. (Tr. at 617, 621). The ALJ ordered that Plaintiff undergo a psychological evaluation, stating that "I recognize that the claimant has had some significant family losses and it is a situation where I think that needs to be developed further . . . . I'm going to send [claimant] out for a full battery of psychological tests to see what we find out." (Tr. at 626).

Jody Rubenstein, Ph. D., completed a psychological evaluation of Plaintiff on February 25, 2004. Dr. Rubenstein diagnosed Plaintiff with recurrent moderate major depressive disorder and indicated that alcohol abuse should be ruled out. (Tr. at 534). He noted that her affect was depressed and she became tearful during the examination. (Tr. at 532). She did not appear to be

5

psychotic at the time of the exam. *Id*. He noted that her overall memory ability is mildly impaired, her attention and concentration function is moderately impaired (although her score on the Arithmetic subtest was severely impaired), her abstraction ability is moderately impaired, and her overall judgment ability is moderately impaired. Dr. Rubenstein assessed Plaintiff's intellectual functioning and concluded that her full scale IQ was 72, in the borderline IQ range, her verbal IQ was 87, in the low average IQ range, and her performance IQ is 58, within the mentally retarded range of intelligence. (Tr. at 533). He noted that "[h]er scores represent a likely notable decrease from her previous abilities, given her academic and vocational achievements" and that "[h]er performance IQ score is statistically significantly below that of her Verbal IQ, indicating notable problems for [her] in the area of nonverbal functioning." *Id*. On the achievement tests administered by Dr. Rubenstein, Plaintiff scored at the high school and eighth grade level, scores "generally at a level greater than what is indicated by her IQ scores." (Tr. at 533). As noted by the ALJ in his decision, Dr. Rubenstein assigned Plaintiff a score of 92 on the MMPI "F" scale of 92. (Tr. at 236, 534). He also assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 55. (Tr. at 535).

At the supplemental hearing, the ALJ heard testimony from medical expert Dr. Antoinette Cicerello regarding Plaintiff's mental impairment. (Tr. at 592-599). Dr. Cicerello referenced Dr. Rubenstein's diagnosis of depression. (Tr. at 592). She opined that there was "no way to tell" whether Plaintiff's alcohol use is the primary reason for her depression. (Tr. at 593). Dr. Cicerello opined that Plaintiff's mental impairment would not have more than a minimal impact on her ability to perform various work activities, including her ability to follow detailed instructions, her ability to use judgment, and her ability to respond appropriately to supervisors,

6

co-workers in the usual work situation.[1] (Tr. at 594). Dr. Cicerello concluded that Plaintiff's depression had not lasted 12 consecutive months, noting that there were no medical records discussing Plaintiff's depression pre-date Dr. Rubenstein's examination in February 2004. (Tr. at 594-95). Based on Dr. Rubenstein's examination, Dr. Cicerello also testified that Plaintiff would have difficulty doing skilled work because she would be limited to detailed instructions. (Tr. at 595). With regard to the MMPI "F" scale score of 92, which assesses exaggeration or malingering, Dr. Cicerello opined that the MMPI "would be considered exaggerated at this point." (Tr. at 597).

The ALJ's finding that Plaintiff's depression does not satisfy the 12-month duration requirement under the Social Security Act is supported by substantial evidence. Under the Act, unless an impairment is expected to result in death, it must have lasted or must be expected to

---

[1]Dr. Cicerello's testimony is unclear with respect to the impact of Plaintiff's mental impairment on her ability to understand, carry out and remember complex instructions. She appears to answer that there is a more than minimal impact but does not correct the ALJ when he states that her answer was in the negative:

> Q. [by ALJ] Okay. All right. So she doesn't meet or equal a listed impairment. It says the claimant does not meet or equal a listed impairment. Would the limitations imposed by her mental impairments, if any, have more than a minimal impact on her ability to understand, carry out and remember complex instructions?
>
> A. Yes.
>
> Q. Okay, it doesn't, what about detailed instructions?
>
> A. No.

In the ALJ's later questioning, he appears to accept Dr. Cicerello's opinion that Plaintiff would be limited in her ability with respect to complex instructions. He asked Dr. Cicerello "[i]f you're limiting her to detailed instructions would it be your opinion that she would have difficulty doing skilled work with that definition?" (Tr. at 595).

7

last for a continuous period of at least 12 months. *See* C.F.R. §§ 404.1509; 416.909. Prior to Dr. Rubenstein's consultative exam in February 2004, there is no medical evidence of Plaintiff's alleged depression. While she did complain of some depression during physician visits for her other impairments in October 2002 (Tr. at 407) and March 2003 (Tr. at 174), both of those physician reports also include notes that Plaintiff smelled of alcohol or appeared intoxicated during the examination and neither physician diagnosed Plaintiff with depression or provided other objective medical evidence of such a mental impairment. Neither doctor prescribed medication for Plaintiff's alleged depression or suggested further medical treatment. Treatment records not submitted to the ALJ but submitted to the Appeals Council demonstrate that she sought treatment for her depression at Jewish Family Services from April 2004 until December 2004 and was prescribed medication. (Tr. at 32-54). She was also seen at LifeNet Community Behavioral Healthcare from June 2004 through October 2004, after which she either cancelled or failed to show up for three additional appointments. (Tr. at 21-31). These medical records do not reflect a mental impairment continuing over a 12 month period during the relevant period (i.e., from the onset date of January 2, 2002 through August 19, 2004, the date of the ALJ's decision) and, therefore, substantial evidence supports the ALJ's decision in this regard.

With regard to Plaintiff's other arguments regarding her alleged mental impairment, because Plaintiff's depression did not meet the Act's duration requirement, a finding of not disabled necessarily followed and the ALJ was not required to determine whether Plaintiff's depression qualified as a "severe impairment" or to proceed with the remaining steps in the disability analysis.

Plaintiff also seeks a remand to the ALJ to consider new evidence, namely a report from

8

her treating physician, Dr. Revi Hardeep, and medical records from Plaintiff's counselor, Linda Wright and Dr. Wahida Elsaie, both associated with LifeNet Community Behavioral Healthcare. "New evidence may be grounds for remand if it is material; this materiality inquiry requires determining whether the evidence relates to the time period for which the disability benefits were denied, and whether there is a reasonable probability that the new evidence would change the outcome of the Commissioner's decision." *Castillo v. Barnhart*, 325 F.3d 550, 551-52 (5th Cir. 2003). Plaintiff references a July 20, 2006 Texas Health and Human Services Commission form prepared by Dr. Hardeep in which he opines that she is permanently disabled due to chronic obstructive pulmonary disease. (Tr. at 16). The form, dated almost two years after the ALJ's decision, was not submitted to the ALJ. Plaintiff submitted the form for review by the Appeals Council. (Tr. at 4). This court must consider the Appeals Council's denial of Plaintiff's request for review and this new evidence submitted to the Appeals Council. *Higginbotham v. Barnhart*, 405 F.3d 332, 337 (5th Cir. 2005). Plaintiff appears to claim that the Appeals Council refused to consider Dr. Hardeep's report. To the contrary, the Appeals Council considered Dr. Hardeep's statement but held that the form did not provide a basis for changing the ALJ's decision because it was not supported by objective medical evidence and was not relevant to the period under review. (Tr. at 4). In this case, the relevant dates are from January 2, 2002, the date Plaintiff claims she became disabled, to August 19, 2004, the date of the ALJ's decision. Dr. Hardeep's report reflects his assessment of Plaintiff's condition on July 20, 2006 and, therefore, is not relevant to Plaintiff's disability status during the time period at issue. If Plaintiff became disabled after the ALJ's August 19, 2004 decision, she must file a new application covering such disability to seek benefits for such disability. *See, e.g., Leggett v. Chater*, 67 F.3d 558, 567 (5th

9

Cir.1995) (rejecting request for remand when new evidence consisted of exams taken three years after the disability application was filed, and at least a year after the ALJ's decision); *Johnson v. Heckler,* 767 F.2d 180, 183 (5th Cir. 1985) (claimant must file new disability claim in order to recover benefits for subsequent deterioration of condition after date of ALJ's decision).

Plaintiff similarly claims that the court should remand the case to the ALJ to consider medical records submitted from Plaintiff's counselor, Linda Wright and Dr. Wahida Elsaie, both associated with LifeNet Community Behavioral Healthcare. (Tr. at 22-31). The records, which were not submitted to the ALJ, cover the time period from June 25, 2004 through December 21, 2004. In denying her request for review, the Appeals Council considered these records but found that they did not provide a basis for changing the ALJ's decision. (Tr. at 4). Only two pages of the medical records falls within the relevant time period. (Tr. at 27-28). Plaintiff argues that the medical records dated after the ALJ's decision are relevant to show that, contrary to the ALJ's decision, Plaintiff did meet the Act's 12 month duration requirement. As discussed above, the ALJ did not err in concluding that Plaintiff's depression did not meet the 12 month duration requirement. Further, Plaintiff does not demonstrate why these medical records, which necessarily reflect Plaintiff's mental condition outside of the relevant period, would serve as evidence of a mental impairment within the relevant period. Remand is not warranted "for the consideration of evidence of a subsequent deterioration of what was correctly held to be a non-disabling condition." *Johnson,* 767 F.2d at 183.

Finally, Plaintiff claims that the ALJ's residual functional capacity is not supported by substantial evidence. The Social Security regulations define residual functional capacity as the most an individual can still do despite any physical and mental limitations that affect what she

can do in a work setting. *See* 20 C.F.R. §§ 404.1545, 416.945. It is the ALJ's responsibility alone to determine the residual functional capacity based on "all the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 404.1546(c), 416.945(a)(3), 416.946(c); *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995). Plaintiff claims that the ALJ erred in his residual functional capacity in not limiting Plaintiff to a clean air environment, in not finding that Plaintiff's mental impairment limited her ability to work, and in not considering accommodations for Plaintiff's diverticulosis.

With respect to the ALJ's finding that Plaintiff be limited to a "climate controlled environment," vocational expert Russell Bowden defined that phrase as what is vocationally referred to as "a person's working environment that is fairly constant temperature year round, no exposure to temperature extremes, either high or low, no exposure to excessive dust, fumes, chemicals, airborne irritants." (Tr. at 627). He elaborated that "consequently you're looking at usually a work environment that's indoors with central heating and air condition [sic] or indoors and there's no product that's going to emit or cause airborne irritants." (*Id.*) Mr. Bowden concluded that Plaintiff's past relevant work as a collections clerk was in a "climate controlled environment" and that with a medium residual functional capacity she could, therefore, perform her past relevant work. (*Id.*) Plaintiff appears to claim that the ALJ's RFC does not take into account Plaintiff's need for a "clean air environment." The ALJ found that Plaintiff "would need to work in a climate-controlled environment." (Tr. at 238.) The ALJ used the term of art "climate controlled environment," which when read in the context of the vocational expert's testimony accounts for Plaintiff's need for a work environment free from airborne irritants. Therefore, the ALJ's finding is supported by substantial evidence.

Plaintiff claims that the ALJ erred in not accounting for Plaintiff's alleged mental impairment or diverticulosis in his residual functional capacity finding. Plaintiff claims that the ALJ should have incorporated limitations noted in Dr. Rubenstein's report (and specifically in his Medical Assessment of Ability to Do Work-Related Activities (Tr. at 536-537))and erred in relying more heavily on testimony by Dr. Cicerello.

"[T]he ALJ is free to reject the opinion of any physician when the evidence supports a contrary conclusion." *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.2000); *see also Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir.1994). As a consultative examiner as opposed to a treating physician, Dr. Rubenstein's opinion is not accorded the controlling weight given to that of a treating physician. 20 C.F.R. § 404.1527(d)(2)-(3). Therefore, the ALJ could properly discount Dr. Rubenstein's opinion based on the lack of treatment relationship with Plaintiff and after reviewing the entirety of the medical evidence and the hearing testimony of Plaintiff and the medical experts. The ALJ did not disregard the findings in Dr. Rubenstein's work-related activities assessment and, in fact, specifically detailed them in his decision. (Tr. at 236, 536-537). The ALJ considered Dr. Rubenstein's report along with the objective medical evidence and the testimony of Plaintiff and three medical experts. Dr. Cicerello testified that Plaintiff would not have more than a minimal impact on her ability to perform various work activities, including her ability to follow detailed instructions, her ability to use judgment, and her ability to respond appropriately to supervisors, co-workers in the usual work situation. (Tr. at 594). Further, none of the objective medical evidence during the relevant period supports Dr. Rubenstein's assessment. With respect to Plaintiff's limitation in carrying out complex instructions, the Vocational Expert, Tammie Donoldson testified that Plaintiff would be able to perform her past

12

relevant work as a collections clerk with the ability to carry out only detailed (but not complex) instructions. (Tr. at 601). After reviewing all of the evidence, the ALJ concluded that Plaintiff retained the residual functional capacity to perform her past relevant work. At bottom, the ALJ properly exercised his responsibility as fact finder in weighing the evidence and in choosing to incorporate limitations into his RFC assessment that were most supported by the record. Therefore, the ALJ's RFC determination is supported by substantial evidence.

Other than Plaintiff's own testimony, there is no evidence that her diverticulosis has any effect on her ability to perform work activities. The ALJ found that Plaintiff's "allegation of extreme limitations due to her impairments is not credible based on the medical evidence." (Tr. at 238). Such credibility determinations are entirely within the province of the ALJ. *Falco v. Shalala*, 27 F.3d 160, 164 (5th Cir. 1994). Based upon the lack of medical evidence to support any limitations due to Plaintiff's diverticulosis, the court finds that substantial evidence supports the ALJ's determination and defers to the credibility assessment of the ALJ in this case.

**RECOMMENDATION:**

For the foregoing reasons, it is recommended that the District Court enter its order AFFIRMING the decision of the Commissioner and DISMISSING this action with prejudice. A copy of this recommendation shall be transmitted to counsel for the parties.

Signed this 18th day of December, 2008

_____
WM. F. SANDERSON, JR.
UNITED STATES MAGISTRATE JUDGE

NOTICE

In the event that you wish to object to this recommendation, you are hereby notified that you must file your written objections within ten (10) days after being served with a copy of this recommendation. Pursuant to *Douglass v. United Servs. Auto Ass'n,* 79 F.3d 1415 (5th Cir. 1996) (*en banc*), a party's failure to file written objections to these proposed findings of fact and conclusions of law within such ten (10) day period may bar a *de novo* determination by the district judge of any finding of fact and conclusion of law and shall bar such party, except upon grounds of plain error, from attacking on appeal the unobjected to proposed findings of fact and conclusions of law accepted by the district court.